UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

FILED
JUN 0 1 1999

| | | |
|---|---|---|
| GLADYS HORTON, et al., | ) | |
|     Plaintiff(s); | ) | |
| | ) | |
| -vs.- | ) | No. CV-97-P-652-W |
| | ) | |
| ALLSTATE LIFE INSURANCE COMPANY, et al., | ) | |
|     Defendant(s). | ) | |

ENTERED
JUN 0 2 1999

## OPINION

The defendants' Motion for Summary Judgment, Motion for Costs, Motion to Conduct Supplemental Discovery and to Compel, and Motion to Strike were considered at a prior motion docket.

### Facts[1]

This action arises from the plaintiffs' purchase of Allstate insurance policies through a telemarketing program in conjunction with Sears & Roebuck. The seven plaintiffs claim not only that they did not agree to purchase or accept the policies, but also that Allstate did not disclose to them that the premiums would be charged to their Sears Charge Card Accounts after a free two-month period. The plaintiffs also allege that they did not receive written policies during the two-month period and that Allstate refused to refund the premiums paid on the policies. The facts relating to each plaintiff are recounted below.

#### Gladys Horton

Ms. Horton received a phone call on March 13, 1995 offering her an Allstate Hospital

---

1. The recitation of "facts" is based upon the presented materials viewed in a light most favorable to the nonmoving parties.

Income Plan with no premiums charged for the first two months. The call was recorded by the telemarketer and the voice was identified, after audio testing, as Ms. Horton's voice. Ms. Horton accepted the free two-month offer and was told that the premiums would thereafter be charged to her Sears Charge Card Account. However, Ms. Horton stated in an affidavit[2] that she informed the telemarketer that she did not want the insurance. From June 1995 through March 1996 Ms. Horton's Sears Charge Card Account was billed $18.60/month. In February or March 1996 Ms. Horton requested cancellation of the policy and refund of all premiums paid. On February 20, 1996 Ms Horton received a letter from Sears confirming the cancellation effective as of January 1996. The premiums paid after the effective date were refunded and credited to Ms. Horton's Sears Charge Card Account.

Culley Rice

Ms. Rice received a phone call on October 24, 1995 offering her an Allstate Term Life Insurance Policy at no charge for the first two months. The call was recorded by the telemarketer. Ms. Rice accepted the offer and was told that, after two months, the premiums would be billed to her Sears Charge Card Account. Ms. Rice claims, in an affidavit, that she believed she had to sign something at the end of the two-month period in order to keep the insurance coverage. Approximately one week later, Ms. Rice received a letter, including the certificate of insurance effective October 31, 1995, an Insurance Buyer's Guide, and a Change of Beneficiary Form. Ms. Rice testified in her deposition that she read the letter and understood the payment arrangement with Sears. Ms. Rice's Sears Charge Card Account was billed $18.50/month from January 1996 to June

---

2. This affidavit, as well as those of the other plaintiffs, is the subject of the defendants' pending Motion to Strike.

2

1996. In June 1996, Ms. Rice requested cancellation of the policy but did not request a refund of the premiums paid.

In her deposition, Ms. Rice testified that she had not been damaged as a result of the allegations made in the complaint. She also stated that she had no discussions with Sears and was not making any claims against Sears in this lawsuit.

Elizabeth and Robert Childers

Mr. Childers received a phone call on July 21, 1994 concerning the purchase of an Allstate Hospital Income Plan. The call was recorded by the telemarketer. Mr. Childers accepted the two-month free offer and was advised that the premiums would thereafter be charged to his Sears Charge Card Account. However, in an affidavit, Mr. Childers stated that he told the telemarketer that he would have to consult with his wife before purchasing the insurance. From October 1994 through October 1995, Mrs. Childers's Sears Charge Card Account was billed $31.45/month. In October 1995, the Childerses requested cancellation of the policy and a refund of all premiums paid. Allstate canceled the policy and refunded three months' worth of premiums by crediting the Sears Charge Card Account. The Childerses testified in depositions that they had no communications with Sears and did not have any claims against Sears.

Cleophus Gaines

Mr. Gaines's wife, Madie Gaines, received a phone call on April 24, 1995 concerning the purchase of an Allstate Hospital Income Plan. The call was recorded by the telemarketer, but the identity of the voice was somewhat disputed by Mrs. Gaines. Mrs. Gaines accepted the free two-month offer and was told that the premiums would thereafter be billed to her husband's Sears Charge Card Account. Allstate issued a Hospital Income Plan Certificate of Insurance in Mrs. Gaines's

3

name, but Mrs. Gaines claims she never received the certificate or the policy.

Mr. Gaines testified that when Allstate subsequently called him, he advised the telemarketer that he did not want the hospital insurance policy. From July 1995 through October 1996, Mr. Gaines's Sears Charge Card Account was billed $28.85/month for the premiums. Mr. Gaines made two claims on the policy in the summer of 1996 and received $450.00 in benefits in August and October 1996. After Mr. Gaines called Allstate and requested cancellation, his policy was canceled in October or November 1996.

Spiver Gordon

Allstate issued a Hospital Income Plan policy in Mr. Gordon's wife's name. Although Mr. Gordon first alleged that he did not authorize the issuance of any Allstate insurance, he testified in his deposition that he did authorize the issuance of the policy and that his complaint was that Allstate failed to cancel the policy upon his request. In an affidavit, Mr. Gordon stated that he never received the certificate of insurance. Mr. Gordon testified that he wrote a letter, had a telephone conversation with Sears or Allstate, and orally requested the cancellation of the policy on several occasions at the local Sears store in Tuscaloosa.[3] Mr. Gordon also testified that he wrote to Sears in April 1998 requesting cancellation.

Elbert Agee

Mr. Agee received a phone call in May 1994 concerning an Allstate Hospital Income Plan. He was told that after the first two months of coverage at no charge, his Sears Charge Card Account would be billed for the premiums. In an unsigned affidavit, Mr. Agee states that he rejected the offer

---

3. The defendants' Motion to Conduct Supplemental Discovery and to Compel relates to Mr. Gordon's alleged failure to testify as to when, and in what order, these events occurred.

4

several times. However, beginning in August 1994, Mr. Agee's account was billed $31.45/month for seven months. In March 1995 Mr. Agee requested cancellation of his policy. He received a premium refund of $31.45 in April 1995.

## Analysis

### I. Misrepresentation

#### Gladys Horton

In support of their motion for summary judgment, the defendants argue that no allegations of misrepresentation were brought on behalf of Ms. Horton. Indeed, although the complaint refers to facts noted in five particular paragraphs, none of those facts relate to Ms. Horton. Although Ms. Horton claims that she did not want the insurance, she does not offer any evidence of false or reckless misrepresentation of fact. In her deposition, she did not identify any statements made by the telemarketer that were not true. The transcript of the telephone call indicates that the telemarketer told Ms. Horton that she could cancel the coverage at any time and that after the first two months of free coverage, she would be billed either through her Sears Charge or, by making the proper arrangements, directly. The transcript also reveals that although Ms. Horton initially said, "I don't think I want to take it," she subsequently told the telemarketer, "Okay, I might try it for just myself." Because the plaintiff has shown no genuine issue of material fact, the defendants' motion for summary judgment is due to be granted as to Ms. Horton's misrepresentation claims.

#### Culley Rice

As in Ms. Horton's case, the facts noted in the complaint as stating a cause of action for misrepresentation do not relate to Ms. Rice. Although Ms. Rice may not have fully understood the policy offered, nothing in the evidence shows that the telemarketer made a false or reckless

5

misrepresentation of fact. When Ms. Rice stated, "I'm not, I don't think I'm gonna keep it," the telemarketer persisted in explaining the features of the policy. The telemarketer said, "But, best of all, Ms. Rice, you have nothing to lose because you have sixty days after you review, uh, receive your Certificate of Insurance to look it over and cancel if you decide it's not right for you. Okay?" After Ms. Rice responded, "Okay, I'll look at it," the telemarketer said, "Now, your effective date of coverage will be shown on your Certificate of Insurance which you will receive within the next two weeks." Although Ms. Rice may not have realized that she was accepting coverage that day, she has not shown that the telemarketer said anything false or represented that Ms. Rice could sign something at the end of the two-month period to keep the policy. Consequently, the motion for summary judgment is due to be granted as to Ms. Rice's misrepresentation claims.

Elizabeth and Robert Childers

Again, as in Ms. Rice's case, the evidence suggests that Mr. Childers may not have understood that acceptance of the free two-month offer would bind coverage under the policy. However, nothing in the evidence shows false or reckless misrepresentation. The transcript reveals that Mr. Childers said, "Uh, we, we need to look at it, you know, talk to you about, uh, you can mail some information, then we'll, uh, set up appointment and meet with you. I would like to do this when my wife around, you know, 'cause she take care of all the insurance, but it sounds good." The telemarketer subsequently said, "Mr. Childers, I would to, uh, suggest that you take advantage of this offer tonight. You have the benefit of that two month free period paid by Sears. Now, we'll get your policy out to you so you have all the information and be under no pressure. To take advantage of this two month bonus offer, I'd like to take your authorization to get the coverage started, okay?" Mr. Childers replied, "Okay." When the telemarketer asked, after explaining how the premiums

would be billed to the Sears Charge Card Account, whether Mr. Childers understood, Mr. Childers responded in the affirmative. When the telemarketer then asked if he had any questions, Mr. Childers answered, "No, like I said, uh, you're going to mail me the information out and we look at it, and, together, and we'll go from there."

Although Mr. Childers may not have understood that the coverage was starting then, nothing in the evidence shows that the telemarketer misrepresented material facts. He informed Mr. Childers that the Certification of Insurance would arrive in the next few weeks and that Mr. Childers could cancel the coverage at any time. Although the telemarketer could have understood Mr. Childers's comments about looking at the information to mean that Mr. Childers did not realize the coverage was being bound, he could also have understood them to mean that Mr. Childers and his wife would decide in the next sixty days whether or not they would keep the policy. Because the court finds no evidence of misrepresentation, the motion for summary judgment as to the Childerses' misrepresentation claims is due to be granted.

Cleophus Gaines

The complaint alleges that the defendants never informed Mr. Gaines that if he failed to cancel the policy during the two-month period, the premiums would be billed to his Sears account. However, the transcript of the conversation with Mrs. Gaines reveals that the telemarketer told her that the premium would be billed to her Sears account each month after the free bonus period and that she could cancel the coverage at any time. Mrs. Gaines testified in her deposition that the telemarketer was supposed to send her the policy but that she and Mr. Gaines never received anything.

In addition to arguing that no evidence of misrepresentation exists, the defendants also assert

7

that Mr. Gaines should be estopped from asserting this claim and others because he made two claims for benefits under the policy and received $450.00. Indeed, it would be difficult to allege that someone who applied for and accepted benefits under the policy did not realize he was paying premiums for it. Because the court finds no evidence of misrepresentation, the defendants' motion for summary judgment on the Mr. Gaines's misrepresentation claim is due to be granted.

Spiver Gordon

Because Mr. Gordon testified in his deposition that he authorized the issuance of the policy and that his claims in this action relate to Allstate's alleged refusal to cancel the policy and refund the premiums, the motion for summary judgment as to Mr. Gordon's misrepresentation claim is due to be granted.

Elbert Agee

The complaint alleges that the defendants never informed Mr. Agee that he would be billed for premiums if he did not cancel the Allstate policy. The complaint also alleges that Allstate never sent Mr. Agee a copy of the policy within the two-month period. Mr. Agee testified in his deposition that, at some point, an Allstate representative told him that if he did not cancel the policy before the end of the two-month period, the premium would be billed to his Sears Charge Card Account. Because the court finds no evidence that a misrepresentation was made to Mr. Agee, the motion for summary judgment as to his misrepresentation claims is due to be granted.

II. Suppression

With respect to all of the plaintiffs, the defendants contend that summary judgment is

8

appropriate because Allstate disclosed the matters allegedly suppressed.[4/] Although it is difficult to determine which facts the plaintiffs believe were suppressed, the court assumes that the alleged suppression relates to the binding of the insurance policies and the automatic billing, after the free two-month period, to the Sears Charge Card Accounts. The court notes the possibility that some of the plaintiffs might not have realized they were being signed up for coverage on the day of the phone solicitation. Some of the comments of the plaintiffs in the transcripts of the taped conversations indicate that they believed they could make a decision about obtaining coverage after they reviewed the policy and materials. This belief was not entirely false because the plaintiffs did have the option of canceling or maintaining the coverage. The plaintiffs[5/] were told that their Certificates of Insurance would arrive shortly and that they could cancel at any time. Additionally, the plaintiffs were informed that at the end of the two-month period, their monthly premiums would be billed to their Sears Charge Card Accounts. Thus, although some may have misunderstood when their coverage was bound, they were clearly informed that they would be billed after the free bonus period.

---

4. With respect to Elizabeth and Robert Childers and Elbert Agee, the defendants also contend that the suppression claims are barred by the two-year statute of limitations. Although the defendants make a strong argument that the Sears Charge Card Account statements served as notice of any alleged fraud, the court, on the merits, finds that the plaintiffs have failed to demonstrate the existence of genuine issues of material fact precluding summary judgment.

5. For two of the seven plaintiffs, no recordings or transcripts of the conversations with the telemarketers were submitted. In Spiver Gordon's case, what was said in the initial solicitation is not relevant because his claim relates to the refund. In Elbert Agee's case, his deposition testimony reveals his understanding of the free two-month offer:

A. ... But there was a promise that I would receive an insurance policy where I could look it over and then form – if I did not call Sears within that time frame that it would be charged to my account. . . .
Q. Is it accurate to state that somebody with Allstate told you that if – assuming you received a policy, if you didn't cancel the policy or terminate the policy that at some point they would charge your Sears charge account? Is that accurate?
A. That's right, yes.

9

In addition to the statements made by the telemarketers, the plaintiffs received monthly statements informing them that their Sears Charge Card Accounts were being charged a premium. Consequently, to the extent the plaintiffs might not have realized they had to cancel the policies or else begin to pay the premiums after two months, the monthly billings would have disclosed the fact of the coverage. Because the court finds no evidence of suppression, the defendants' motion for summary judgment as to this claim is due to be granted.

III. Conversion

The plaintiffs allege that Allstate's refusal to refund all premiums paid constitutes conversion. The defendants argue that the plaintiffs cannot sustain a conversion claim because they cannot prove a wrongful taking, illegal assumption of ownership, illegal use of another's property, or wrongful detention or interference with another's property. *See Gillis v. Benefit Trust Life Ins. Co.*, 601 So. 2d 951, 952 (Ala. 1992). Because the plaintiffs accepted the insurance and were informed of how the premiums would be billed, the defendants argue, no evidence supports a conversion claim.

The fact that the plaintiffs did get something in return for the premiums they paid counsels against a finding that the defendants converted the plaintiffs' property. One of the plaintiffs, Mr. Gaines, filed claims under his policy, thereby receiving a monetary benefit from the premiums paid. In addition, the evidence indicates that the plaintiffs appeared to accept the offers, making it difficult for the court to find that the defendants' retention of the premiums was wrongful or illegal. Finally, with the exception of Spiver Gordon, the plaintiffs who requested refunds received credits for any insurance charges billed after the termination date. As a result, the court finds that the defendants' motion for summary judgment is due to be granted as to all of the plaintiff's conversion claims

except for Spiver Gordon's.

IV. Motion to Conduct Supplemental Discovery and to Compel

In light of the apparent change in the allegations that Mr. Gordon makes, the defendants' motion to conduct supplemental discovery, to compel production of documents, and to compel answers to deposition questions is due to be granted only as it relates to Mr. Gordon's conversion claim. The defendants will be permitted to file an additional dispositive motion after the completion of the supplemental discovery.

V. Motion to Strike

The motion to strike is due to be denied as moot.

Dated: May 29, 1999

Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. J.L. Chestnut, Jr.
    Mr. Ollie L. Blan
    Mr. Howard K. Glick